O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

PARAMOUNT CONTRACTORS AND     )     CASE NO.: CV 07-159 ABC (JWJx)
DEVELOPERS, INC., a California )
corporation,                  )
                              )     **ORDER RE: DEFENDANT'S MOTION FOR**
                Plaintiff,    )     **SUMMARY JUDGMENT**
                              )
        v.                    )
                              )
CITY OF LOS ANGELES, a        )
California municipal          )
corporation and DOE 1 through )
DOE 10, inclusive,            )
                              )
                Defendants.   )
_____ )

      Pending before the Court is Defendant City of Los Angeles's (the

"City's") motion for summary judgment, filed on March 10, 2008.

Plaintiff Paramount Contractors and Developers, Inc. ("Plaintiff")

opposed on April 28, 2008 and the City replied on May 5, 2008.  The

Court found this matter appropriate for resolution without oral

argument and took the matter under submission on May 7, 2008.  Fed. R.

Civ. Proc. 78; Local Rule 7-15.  After considering the papers from the

parties and the case file in this matter, the Court GRANTS the City's

motion for summary judgment in its entirety.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**[1]

Plaintiff owns and operates two large office buildings located at 6464 and 6565 West Sunset Boulevard, Los Angeles, California (the "Sunset Properties"). (Def.'s Statement of Uncontroverted Facts ("UF") No. 1.)  Plaintiff also engages in the business of outdoor advertising and it has used the Sunset Properties periodically to place signs on the walls of these buildings. (Id. No. 2.)  On May 15, 2006 and June 29, 2006, Plaintiff applied for and received permits to erect temporary signs on the Sunset Properties (the "TSD" permits). (UF No. 3; Defendant's Request for Judicial Notice ("Def. RJN") Exh. E (temporary sign permits).)  When maintained for twelve months out of the year, these signs are classified by the City and regulated as "supergraphic signs." (UF No. 5.)  Although the temporary sign provision through which Plaintiff obtained permits only allows temporary signs for 120 days, Plaintiff has refused to remove the signs or apply for permanent permits. (Id. No. 4.)  Plaintiff admits that, if permitted permanently, the City would classify these signs as "supergraphic" signs. (Id. No. 5; Compl. ¶ 9.)

Since Plaintiff filed the complaint, the City passed Ordinance No. 179416, which transfers the City's sign regulations from the Building Code to the City's Zoning Code (the "sign ordinance"). (UF No. 6; Def. RJN, Ex. B.)  The Sunset properties fall within the area of the City designated as the "Hollywood Signage Supplemental Use District" (the "SUD"), City Ordinance No. 176172. (UF No. 7; Compl. ¶ 13.)  The City delegates administration of the SUD within the

---

[1] The Court has considered the City's objections to Plaintiff's evidence and has not relied on any inadmissible evidence in granting Defendant's motion.

Hollywood Redevelopment Project Area to the Los Angeles Community Redevelopment Agency (the "CRA"). (UF No. 8; Def. RJN, Ex. C, § 6.D.) The CRA, in turn, relies on a set of regulations entitled "Amended Design for Development for Signs in Hollywood" (the "ADD"). (UF No. 9.)

Plaintiff's complaint initially included multiple challenges to the sign ordinance under the First Amendment:

- The sign ordinance defines "supergraphics signs," "wall signs," "mural signs," and "temporary special displays," but "the City uses these definitions as a vehicle to illegally allow messages to be posted only by favored speakers while prohibiting similar speech by others." (Compl. ¶ 11.)

- Although the sign ordinance bans outright all supergraphic and off-site signs, the City "arbitrarily grants permission for such signs to be constructed by either re-characterizing them as mural signs or granting them discretionary approvals conditioned either on the payment of large sums of money to the City or compliance with content restrictions imposed by City agencies." (Id. ¶ 12.)

- The City impermissibly requires a party to participate in a sign reduction program before constructing supergraphic signs in the vicinity, or paying an "in lieu of" fee to the City. (Id. ¶¶ 13-15.)

- The City has unfettered discretion in denying a permit for a sign by determining that the sign is a traffic hazard. (Id. ¶ 19.)

- The CRA is empowered to approve or disapprove mural signs based on their content. (Id. ¶ 21.)

In July 2007, the Court took on the daunting task of analyzing Plaintiff's complaint when the City moved to dismiss it for failing to state a claim. On July 23, 2007, the Court issued a detailed 35-page Order granting in part and denying in part the City's motion. Plaintiff never filed an amended complaint, so whatever is left after the Court's ruling governs Plaintiff's claims on summary judgment.

First, the Court noted that it was "exceedingly difficult to discern the difference" between Plaintiff's facial and as-applied

1  challenges from the face of the complaint. (July 23, 2007 Order at

2  13:6-7.)  The Court found it unnecessary to do so at that time because

3  the City had only attacked Plaintiff's standing to assert <u>any</u> as-

4  applied challenges.  The Court rejected the City's argument, so

5  Plaintiff's as-applied claims, whatever those might be, remain. (<u>Id.</u>

6  at 13:11-13.)  Second, the Court dismissed many of Plaintiff's facial

7  challenges to the sign ordinance.  For example, the Court dismissed

8  <u>all</u> of Plaintiff's challenges to TSD signs: "Because Plaintiff was

9  never denied permits under the temporary sign permitting provision, it

10 suffered no 'invasion' of a legally protected interest and has no

11 standing to facially challenge this specific provision." (<u>Id.</u> at

12 19:7-10.)  The Court also dismissed Plaintiff's facial challenge to

13 the sign ordinance's hazard to traffic provision because Plaintiff had

14 not "alleged sufficient facts that the Hazard to Traffic provision

15 would be applied to it," (<u>id.</u> At 31-32, n.9), and Plaintiff has not

16 since alleged any facts to change that conclusion.

17      The Court then analyzed the City's supergraphic sign regulations,

18 noting that supergraphic signs are prohibited unless "specifically

19 permitted pursuant to a legally adopted specific plan, supplemental

20 use district or an approved development agreement." (<u>Id.</u> at 3:8-10

21 (citing former Municipal Code section 91.6205.11(9), now section

22 14.4.4(9)).)  As noted above, Plaintiff's signs are located in the

23 Hollywood Redevelopment Project area, which is governed by the CRA and

24 the ADD, so the Court analyzed the ADD regulations applicable to the

25 Sunset Properties.  The ADD contains four provisions that apply to

26 supergraphic signs: sections I, III, IV, and VIII.  The Court analyzed

27 these sections and concluded that Plaintiff had stated a facial claim

28 only as to section I.  Section VIII allows supergraphic signs, but

1  requires an applicant to either reduce current signage or enter an
2  agreement containing revenue provisions, fees, or performance
3  provisions that would enable the City to obtain the same sign
4  reduction goal.  (Id. at 20:3-7.)  This provision "does not grant
5  officials unfettered discretion to deny permits based on content."
6  (Id. at 20:15-16.)  The Court also found that sections III, IV and
7  VIII are "narrowly tailored" to serve the interests of public safety
8  and aesthetics and "leave open alternative channels of speech."  (Id.
9  at 24:24-27.)  Based on this analysis, the Court dismissed Plaintiff's
10  challenges to these claims.

11      The Court, however, found merit in Plaintiff's facial challenge
12  to the phrase "clear and attractive graphics" as one consideration in
13  approving signage under the ADD.  The Court concluded that the term
14  "attractive" carries with it "an inherently high risk that certain
15  viewpoints might be restricted" and, therefore, permitted Plaintiff to
16  pursue this challenge.  (Id. at 23:19-21, 26:13-15.)  The Court held
17  that this "attractive graphics" provision was severable, however, and
18  concluded that Plaintiff did not have standing to facially challenge
19  any other provision of the sign ordinance.  (Id. at 30:25-27.)

20      As noted, Plaintiff chose not to file an amended complaint
21  following the Court's ruling.  Therefore, the Court can pinpoint only
22  six remaining challenges that can fairly fall within Plaintiff's
23  complaint:

24      1.  A facial challenge to the "clear, attractive" graphics
            provision in section I of ADD as content-based;
25
26      2.  An as-applied claim that the City discriminatorily enforces
            the ADD's TSD provisions by allowing Plaintiff's competitors
            to keep signs up longer than 120 days;
27
28      3.  An as-applied claim that the City discriminates in applying
            the supergraphic signs by recharacterizing them as mural

signs;

4.  An as-applied claim that the City arbitrarily conditions approval of supergraphic signs on the payment of large sums of money;

5.  An as-applied claim that the City conditions approval of supergraphic signs on compliance with content-based restrictions; and

6.  A claim that these activities violate Plaintiff's equal protection rights.

As discussed below, Plaintiff has failed to demonstrate a genuine issue on any of these claims and the City is entitled to summary judgment.

**II.  LEGAL STANDARD**

It is the burden of the party who moves for summary judgment to establish that there is "no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); British Airways Bd. v. Boeing Co., 585 F.2d 946, 951 (9th Cir. 1978).  If the moving party has the burden of proof at trial (the plaintiff on a claim for relief, or the defendant on an affirmative defense), the moving party must make a showing sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.  See Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 487-88 (1984)).  This means that, if the moving party has the burden of proof at trial, that party "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in [that party's] favor."  Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986).

If the opponent has the burden of proof at trial, then the moving

6

1  party has no burden to negate the opponent's claim.  <u>See Celotex Corp.</u>

2  <u>v. Catrett</u>, 477 U.S. 317, 323 (1986).  In other words, the moving

3  party does not have the burden to produce any evidence showing the

4  absence of a genuine issue of material fact.  <u>Id.</u> at 325.  "Instead .

5  . . the burden on the moving party may be discharged by 'showing' –

6  that is, pointing out to the district court – that there is an absence

7  of evidence to support the nonmoving party's case."  <u>Id.</u>

8      Once the moving party satisfies this initial burden, "an adverse

9  party may not rest upon the mere allegations or denials of the adverse

10  party's pleadings . . .  [T]he adverse party's response . . . must set

11  forth specific facts showing that there is a genuine issue for trial."

12  Fed. R. Civ. P. 56(e) (emphasis added).  A "genuine issue" of material

13  fact exists only when the nonmoving party makes a sufficient showing

14  to establish the essential elements to that party's case, and on which

15  that party would bear the burden of proof at trial.  <u>Celotex</u>, 477 U.S.

16  at 322-23.  "The mere existence of a scintilla of evidence in support

17  of the plaintiff's position will be insufficient; there must be

18  evidence on which a reasonable jury could reasonably find for

19  plaintiff."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252

20  (1986).  The evidence of the nonmovant is to be believed, and all

21  justifiable inferences are to be drawn in favor of the nonmovant.  <u>Id.</u>

22  at 248.  However, the court must view the evidence presented to

23  establish these elements "through the prism of the substantive

24  evidentiary burden."  <u>Id.</u> at 252.

25  **III. ANALYSIS**

26      **A.   Plaintiff's Facial Challenge to "Clear, Attractive" Graphics**

27          **Provision**

28      The City argues that this claim should be dismissed because it is

a permissible content-neutral time, place and manner restriction. Plaintiff has not rebutted Defendant's argument in its opposition, so the Court deems this claim abandoned.  Nevertheless, the Court will briefly discuss why this claim fails.

Generally, the Court must interpret the sign ordinance "if it is fairly possible, in a manner that renders it constitutionally valid." Desert outdoor Advertising, Inc. v. City of Oakland, 506 F.3d 798, 802 (9th Cir. 2007).  To determine content neutrality, the Court should not "make a searching inquiry of hidden motive," but rather, the court must "look at the literal command of the restraint." Menotti v. City of Seattle, 409 F.3d 1113, 1129 (9th Cir. 2005).  "The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys."  Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989).

Here, when read in isolation, the Court sees some risk that the "clear, attractive" graphics provision might allow the City to restrict signs based on their content, but it must be read in the context of the entire ADD.  Section I of the ADD, which contains this provision, sets forth only the statement of purpose of the ADD and has no operational effect.  Section VI of the ADD sets forth the operational regulations, including only one restriction potentially related to "clear, attractive" graphics: "[t]he written message shall not exceed 15 percent of the total area of the sign.  Depiction of any logo or text shall be counted as text."  (Def. RJN D § VI K.)  Neither this nor any other part of this regulation suggests that the City may use the "clear, attractive" graphics guidelines to prohibit disfavored

speech and the Court construes this provision as content-neutral.
Since aesthetic concerns can provide a basis to restrict content-neutral speech, <u>see</u> <u>G.K. Ltd. Travel v. City of Lake Oswego</u>, 436 F.3d 1064, 1071 (9th Cir. 2006) ("Cities do have a substantial interest in protecting the aesthetic appearance of their communities by avoiding visual clutter . . ."), the Court concludes that the "clear, attractive" graphics consideration in section I of the ADD is a valid content-neutral restriction.  The City's motion for summary judgment on this claim is GRANTED.

**B.   Plaintiff's "As-Applied" Challenges**

The City was understandably perplexed by Plaintiff's as-applied challenges since the complaint fails to properly delineate them.  The City directed interrogatories to Plaintiff on this issue in an attempt to clarify it and Plaintiff enigmatically responded:

> The City has issued Orders to Comply to Plaintiff's two sign locations, has held hearings before the Board of Building and Safety Commissioners, in which the Board determined that the Building Department did not err or abuse its discretion in issuing such Orders to Comply and furthermore has held hearings in the city attorney's office concerning its claim that Plaintiff's signs violate the City's sign regulations.

(UF No. 10.)  This does little to shed light on Plaintiff's claims.  The exact contours of Plaintiff's claims are critical because "[a]s-applied challenges are not based solely on the application of an unconstitutional law to a particular litigant." <u>Desert Outdoor</u>, 506 F.3d at 805.  "Rather, they separately argue that <u>discriminatory enforcement</u> of a speech restriction amounts to viewpoint discrimination in violation of the First Amendment. It is for this reason that a successful as-applied challenge does not render the law itself invalid, but only the particular application of the law.  An as-applied challenge goes to the

1  nature of the application rather than the nature of the law

2  itself."  Id.  Therefore, Plaintiff cannot maintain a mere "as-

3  applied" challenge without pointing to the specific way in which

4  the City unconstitutionally applied the statute.

5              1.   Discriminatory Enforcement of the TSD Provisions

6         Plaintiff seems to suggest that the City discriminatorily

7  enforced the TSD provisions by allowing some of Plaintiff's

8  competitors to maintain signs for twelve months while only

9  allowing Plaintiff to maintain its signs for four months

10  according to the TSD regulations.  (Compl. ¶ 9.)  The City argues

11  that Plaintiff's claim is moot based on amendments to the ADD,

12  and even if not, Plaintiff has failed to raise a genuine issue

13  that other sign locations were permitted to maintain signs in

14  violation of the TSD regulations.

15              a.   Mootness

16         On October 17, 2007, the Hollywood CRA amended the ADD to

17  ban all TSDs in the Hollywood Redevelopment area.  (UF No. 11.)

18  The memorandum enacting this provision specifically indicates

19  that the CRA was responding to two concerns: "The recommendation

20  is an initial response to Board and community concerns about the

21  actual and potential increase in visual blight resulting from

22  this type of sign.  This recommendation also responds to a

23  federal court order from Judge Otero finding portions of the TSD

24  regulations invalid."  (Declaration of Christopher Rudd ¶ 7, Ex.

25  A.)  The memorandum discussed in detail these considerations and

26  the reasons it decided to ban these signs.

27         While a defendant's "voluntary cessation of a challenged

28  practice does not deprive a federal court of its power to

1  determine the legality of the practice," if a law is enacted to
2  resolve the parties' dispute, "the case becomes moot for lack of
3  a live case or controversy." Qwest Corp. v. City of Sunrise, 434
4  F.3d 1176, 1181 (9th Cir. 2006).  Plaintiff has not suggested
5  that the CRA will reenact this provision if Plaintiff's case is
6  dismissed, especially since the reasons for its repeal do not
7  relate to Plaintiff's lawsuit.  Plaintiff has expressly
8  disclaimed any claim to past damages (UF No. 12), so Plaintiff's
9  only claim for an injunction is rendered moot by the repeal of
10 the TSD permitting provisions in the ADD.

           b.  Merits of Plaintiff's Discriminatory
               Enforcement Claim

13 Even if Plaintiff's claim under the TSD provisions was not
14 moot, Plaintiff has failed to raise a genuine issue that it is
15 discriminatorily enforced.  In response to the City's
16 interrogatories, Plaintiff offers eight comparable billboard
17 sites that were not subject to the TSD limitations: (1) 6290 W.
18 Sunset Blvd.; (2) 6430 W. Sunset Blvd.; (3) 6801 W. Hollywood
19 Blvd.; (4) 1025 Highland Blvd.; (5) 6761-6763 W. Hollywood Blvd.;
20 (6) 6255 W. Sunset Blvd.; (7) 7080 W. Hollywood Blvd.; and (8)
21 6922 W. Hollywood Blvd.  (UF No. 13.)  A close examination of the
22 history of these sites, however, does not create a genuine issue
23 that the City has engaged in any impermissible discrimination.

           i.  6290 W. Sunset Blvd.

25 The City issued TSD permits for this site on May 13, 2005,
26 November 20, 2006, and May 16, 2007.  (UF No. 14.)  The City also
27 issued a permit on September 13, 2005 for Temporary Construction
28 Wall signs, pursuant to Ordinance 176858, and then a supplemental

permit that allowed the Temporary Construction Wall signs under
Ordinance 179267, which replaced Ordinance 176858.  (UF Nos. 15-
16.)  On April 11, 2007, an inspection conducted at this site
revealed that TSDs were erected at this site during a time when
no valid TSD permit was in force.  (UF No. 18.)  The City's
Department of Building and Compliance, which conducted the
inspection, notified the owner and, before further actions were
taken, the owner pulled a permit that remedied the violation.
(Id.)  Other than this situation, the City claims it was not made
aware of any other violations.  (UF No. 19.)

Plaintiff cites a permit issued for this location on May 5,
2005 that included a variance for compliance with some of the TSD
restrictions, including the 120-day time limit.  (Declaration of
Pamela Anderson ("Anderson Decl.") ¶ 18.)  Plaintiff also cites
variances granted at this site to allow opaque signs, rather than
the vinyl signs Plaintiff asked to erect on its sites, and
lighting that could remain on until 2 a.m.  (Id. ¶ 19.)

While the City might have granted these variances, they are
irrelevant to Plaintiff's claim for several reasons.  First,
Plaintiff never sought a variance, so it is limited to proving
discrimination based on the City's failure to enforce the TSD
provisions for signs that extended beyond the 120-day time limit.
Second, there could be myriad reasons why the City permitted
these variances, but refused to permit Plaintiff to erect
permanent signs, few (if any) of which relate to the speech of
the applicant.  In fact, Plaintiff has omitted a critical piece
of its claim: proof that any discrimination arose from
considerations of content of the proposed signs.  Again, many

reasons might justify these variances, and Plaintiff has not
pointed to any evidence to suggest that the City was approving
speakers because of the message.

Plaintiff admits that there is a history of code enforcement
at this site. (Anderson Decl. ¶ 17.) Therefore, Plaintiff has
failed to raise a genuine issue that the enforcement history at
this site demonstrates invidious discriminatory enforcement of
the TSD provisions.

ii.   <u>6430 W. Sunset Blvd.</u>

Although Plaintiff claims that the City allowed an
unpermitted TSD sign at this location in 2006, the City has
offered evidence that it issued two permits for Temporary
Construction Wall signs and it was otherwise never made aware of
any other illegal signs. (UF Nos. 20-21.) Plaintiff provides a
photo purporting to represent "a sample of unpermitted
supergraphic signage displayed February 2006." (Anderson Decl. ¶
20.) This unsupported speculative evidence does not demonstrate
that these signs were actually illegal or rebut the City's claim
that it did not know these signs were unpermitted, even if they
were illegal. Plaintiff also cites variances granted to the
owner of this location (<u>id.</u>), but fails to demonstrate that these
variances were directed at approving the content of these signs.
Again, Plaintiff did not apply for a variance, so any variances
that were granted cannot be compared to Plaintiff's situation,
and, in any event, Plaintiff has not offered evidence that the
variance was the result of discriminatory enforcement. Plaintiff
has failed to raise a genuine issue that the City discriminated
against Plaintiff as to this site.

1              iii.  <u>6801 W. Hollywood Blvd.</u>

2      The City indicates that the supergraphic signs at this

3 location – the "Hollywood & Highland" complex – were permitted

4 prior to the enactment of the SUD or ADD.  (UF No. 22.)  Since

5 that time, no additional supergraphic sign has been permitted at

6 the site absent compliance with the sign reduction/in lieu of fee

7 requirement in the ADD.  (<u>Id.</u> No. 23.)  Plaintiff claims that

8 later signs have been permitted at this site pursuant to

9 variances, including exceptions for signs exceeding square

10 footage limitations.  (Anderson Decl. ¶¶ 22-23.)  Plaintiff again

11 fails to demonstrate that this site is comparable to its

12 locations or that the City treated this site differently because

13 it approved the message being disseminated.  In fact, Plaintiff

14 concedes that the signs approved at this site after the ADD was

15 enacted complied with the sign reduction/in lieu of fee

16 provisions.  (UF No. 23.)  Therefore, Plaintiff has failed to

17 raise a genuine issue that this site demonstrates impermissible

18 discrimination.

19              iv.  <u>1025 Highland Blvd.</u>

20      The City currently has an open enforcement case against the

21 owner of this site, which has been held in abeyance due to

22 litigation and pending settlement negotiations.  (UF No. 24.)

23 Plaintiff nevertheless argues that signs have been illegally

24 maintained at this site going back at least 10 years.  (Anderson

25 Decl. ¶ 24.)  Plaintiff, however, admits that the City has cited

26 the illegal signs at this location as far back as 1999.  (<u>Id.</u> ¶

27 25.)  This does not create a genuine issue that this site was

28 treated differently than Plaintiff's sites.  Both have been

1  subject to enforcement and both are currently in litigation over

2  the illegal signage.

3                    v.   6761-6763 W. Hollywood Blvd.

4       Although Plaintiff identifies this address, the City

5  indicates that no signs are maintained there.  Rather, it appears

6  that Plaintiff meant to refer to 6751-6755 W. Hollywood Blvd.,

7  for which the City has created a long history of enforcement

8  actions over supergraphic signs.  (UF Nos. 25-26.)  For example,

9  the City issued Orders to Comply at this site on June 21, 2005,

10  January 16, 2007, and September 20, 2007.  (Id. No. 26.)  Because

11  the signs remained, the City referred this case to the City

12  Attorney's office for criminal enforcement.  (Id.)  Plaintiff has

13  failed to offer any evidence to rebut the City's showing, so it

14  has failed to raise a genuine issue that this site demonstrates

15  unlawful discrimination.

16                    vi.   6255 W. Sunset Blvd.

17       The City also has a history of enforcement against illegal

18  signs at this location.  (UF No. 27.)  For example, in June 2006,

19  the City received notice of an illegal supergraphics sign at this

20  site.  (Id.)  A verbal order to remove the sign was issued, and

21  an inspection on July 19, 2006 revealed the illegal sign had been

22  removed.  (Id.)  On December 21, 2006, a permit was issued for a

23  TSD sign at this site.  (Id.)  On May 12, 2007, the City issued

24  an Order to Comply to remove this sign and an inspection

25  conducted on October 3, 2007 revealed that the illegal sign had

26  been removed.  (Id.)  Plaintiff does not dispute these facts.

27       Plaintiff suggests that the five-month delay between May and

28  October 2007 allowed the site owner to post many illegal signs.

1  (Anderson Decl. ¶ 27.)  For this claim to be plausible, the Court
2  would have to infer that the City intentionally delayed
3  enforcement to enable the site owner to post multiple signs.
4  This stretches the limits of logic; there is no evidence that the
5  City would have any interest in delaying five months, only to
6  then force the site owner to take down the offending signs.  In
7  any event, Plaintiff's own evidence suggests that it, too, was
8  permitted to post illegal supergraphic signs for more than five
9  months without permits.  Plaintiff received an Order to Comply as
10 early as November 2005.  (Anderson Supp. Decl. ¶ 29.)  However,
11 Plaintiff did not obtain TSD permits until more than six months
12 later.  (UF No. 3.)  Thus, even if the City had affirmatively
13 decided to allow this site owner to maintain illegal signs for
14 five months, it gave Plaintiff that same opportunity.  Plaintiff
15 cannot demonstrate a genuine issue that the City treated this
16 site owner differently from Plaintiff.

17                    vii.  7080 Hollywood Blvd.

18      The City has also demonstrated a history of enforcement at
19 this site.  On December 18, 2007, the City issued an Order to
20 Comply for illegal supergraphic signs.  (UF No. 28.)  An
21 inspection conducted on January 14, 2008 revealed that the sign
22 had been removed, but a later inspection revealed that new signs
23 had been installed.  (Id.)  The City was unable to obtain
24 compliance from the site owner, so it referred the case to the
25 City Attorney's office for criminal enforcement.  (Id.)

26      Inexplicably, Plaintiff attempts to dispute these facts by
27 citing multiple other Orders to Comply issued in 1998, 2002, and
28 2004 to this site owner for illegal supergraphic signs.

                                16

1  (Anderson Decl. ¶ 29.)  Plaintiff claims that this demonstrates
2  "uninterrupted use of its walls for advertising purposes." (Id.)
3  Rather than create a genuine issue, Plaintiff's admission
4  demonstrates that the City has taken enforcement actions against
5  this site owner just as it did Plaintiff.  As a result, Plaintiff
6  can demonstrate no genuine issue that it was treated differently
7  than this site owner.

8                    viii.    6922 Hollywood Blvd.

9       The City has also taken enforcement actions against this
10 site.  On November 6, 2006, the City issued an Order to Comply
11 for non-permitted supergraphic signs.  (UF No. 29.)  An
12 inspection conducted on November 27, 2006 revealed that the
13 offending signs had been removed.  (Id.)  On December 12, 2007,
14 another Order to Comply was issued after inspectors observed more
15 non-permitted signs.  (Id.)  The City has been unable to obtain
16 compliance, so it has referred the matter to the City Attorney's
17 office for criminal enforcement.  (Id.)  Plaintiff has offered no
18 evidence to dispute this history of enforcement.  (Anderson Decl.
19 ¶ 30.)  Therefore, Plaintiff has failed to raise a genuine issue
20 that this site owner was treated differently than Plaintiff.

21                      ix.  Conclusion

22      As the discussion above demonstrates, Plaintiff's
23 discriminatory enforcement claim fails because Plaintiff has not
24 raised a factual issue that it was subject to discrimination as
25 compared to other site owners.  Even if Plaintiff could, it has
26 failed to raise a factual issue that any differences in treatment
27 were attributable to considerations of the content or viewpoint
28 of either Plaintiff's or other site owners' signage.  The City is

                            17

1  entitled to summary judgment on this claim.

2        2.   Recharacterization of Supergraphic Signs as Mural

3             Signs

4        Plaintiff alleges that, "[w]hile supergraphics and all off-

5  site signs are generally banned under the express provisions of

6  the Sign Ordinance, the City arbitrarily grants permission for

7  such signs to be constructed by [] recharacterizing them as mural

8  signs . . ." (Compl. ¶ 12.)  Mural signs are generally

9  prohibited unless "specifically permitted pursuant to a legally

10 adopted specific plan, supplemental use district or an approved

11 development agreement."  Municipal Code § 14.4.4(10) (formerly §

12 91.6205.11(10)).  The Court did not dismiss this claim at the

13 motion to dismiss stage because it could not determine from the

14 face of the complaint whether the Hollywood Redevelopment area

15 fell within this exception for mural signs. (July 23, 2007 Order

16 at 32.)  The City has demonstrated, and Plaintiff admits, that

17 neither of Plaintiff's properties is located within a specific

18 plan area or supplemental use district that permits mural signs.

19 (UF no. 32; Declaration of Brad Neighbors ¶ 14.)  Therefore, as a

20 matter of law, even if Plaintiff is correct, the City could not

21 have recharacterized Plaintiff's supergraphic signs as mural

22 signs to approve them.  The City is entitled to summary judgment

23 on this claim as well.

24        3.   Permits Based Upon Payments of Large Sums of Money

25       Plaintiff alleges that the City grants permits for

26 supergraphic signs "on the payment of large sums of money to the

27 City." (Compl. ¶ 12.)  Plaintiff offers evidence that it was

28 required to pay an "in lieu of" fee under the ADD for the 6464

                                 18

1  Sunset Blvd. property in the amount of $1,171,125, or $37.50 per

2  square foot and a fee of $123,750 or $37.50 per square foot for

3  the 6565 Sunset Blvd. property (based on square footage).

4  (Declaration of Bradley Folb ("Folb Decl.") ¶¶ 5-6.)  The CRA's

5  proposal, which included these fees, also included other

6  requirements such as: (1) a liquidated damages provision; (2) a

7  prohibition against sign violations; (3) a 60-day time limit for

8  dated advertising copy; (4) a prevailing wage requirement; (5)

9  maintaining the building as a "Class A" building; (6) preventing

10 the property from becoming "blighted"; (7) maintaining occupancy

11 of the building; (8) maintaining the same level of quality for

12 tenants; (9) turning off illumination at 1:00 a.m.; (10)

13 requiring that any other company maintaining signage register

14 with the CRA; (11) allowing the City to use the parking facility

15 at night; and (12) requiring Plaintiff to build one more level of

16 parking in the building.  (Opp'n at 6:3-23.)

17      The Court views this claim as a challenge to the City's

18 ability to impose a fee to erect signage.  See Forsythe Cty. v.

19 Nationalist Movement, 505 U.S. 123 (1992) (invalidating a

20 variable parade permit fee provision as giving county unfettered

21 discretion to curtail speech based on content).  However, the

22 Court previously rejected Plaintiff's facial challenge to this

23 provision, finding that the fee provision was content-neutral and

24 did not give the City unfettered discretion to deny speech

25 rights.  (July 23, 2007 Order at 19:12-21:11.)  Plaintiff's only

26 remaining claim is an as-applied challenge to the fee provision

27 that the City discriminated in applying its fee provision to

28 Plaintiff as compared to other applicants based on Plaintiff's

1 | speech rights.   See Desert Outdoor, 506 F.3d at 805.

2 |     Plaintiff cites the City's allegedly more favorable
3 | treatment of the property owner at 6290 Sunset Blvd. – "CIM" – as
4 | discriminatory.   Plaintiff offered evidence that CIM intended to
5 | erect 21-story-high signs on a flat, opaque surface, in contrast
6 | to Plaintiff's five- and eleven-story-high proposed signs.   (Folb
7 | Decl. ¶ 10.)   Placement on these solid surfaces costs $2.30 per
8 | square foot, while see-through mesh (allegedly required by the
9 | City for Plaintiff's signs) costs an average of $10.00 per square
10 | foot.   (Id.)   Despite this, the City required CIM to pay only
11 | $700,000 over ten years, as opposed to the approximately $1.2
12 | million Plaintiff would have paid.   (Id. ¶ 11.)   Plaintiff also
13 | had to provide parking concessions.   (Id.)

14 |     A close review of the CIM agreement and the agreement
15 | proposed to Plaintiff, however, reveals that they are more
16 | similar than how Plaintiff portrays them.   First, the proposed
17 | agreement offered to Plaintiff states explicitly: "The following
18 | agreement is based on the terms of the sign agreement approved by
19 | the Agency Board in October 2005 between the CIM Group and the
20 | Agency for the Sunset & Vine Tower adaptive reuse project."
21 | (Folb Decl., Ex. A.)   Second, both agreements set a 10-year
22 | duration, include a 60-day time limit for dated advertising copy,
23 | include night-time illumination limitations, contain liquidated
24 | damages provisions, and require any other sign company to execute
25 | a substitute sign agreement.   (Id.; Anderson Decl., Ex. 53.)   The
26 | material differences include the ones mentioned above: Plaintiff
27 | must pay a higher fee and must provide the parking concessions.
28 |     The Court rejects Plaintiff's claim that any differences in

1  these agreements demonstrate discrimination based on Plaintiff's
2  speech rights.  Plaintiff offers no evidence that the City knew
3  of the content of any proposed signage, so it would have been
4  impossible for the City to set the terms of these agreements
5  based upon the content of the proposed speech.  The sorts of fees
6  struck down in other cases varied based on the content of the
7  proposed speech.  <u>See</u> <u>Forsythe</u>, 505 U.S. at 134 (noting that,
8  "[i]n order to assess accurately the cost of security for parade
9  participants, the administrator must necessarily examine the
10 content of the message conveyed." (citations and quotations
11 omitted)).  The in lieu of fees for both Plaintiff and CIM appear
12 to have been set based on square footage and the applicant's
13 willingness to reduce signage, not the content of any proposed
14 signs.  The CIM agreement specifically notes that "Property Owner
15 shall remove all existing billboard and pole sign structures on
16 the Site."  (Anderson Decl., Ex. 53.)  This might have resulted
17 in the lower in lieu of fee for CIM, while Plaintiff offered no
18 evidence that it offered to reduce signage on the Sunset
19 Properties.  Plaintiff has not offered a scintilla of evidence to
20 suggest that the CRA sought to curb Plaintiff's speech rights
21 based on the content of the speech Plaintiff wished to convey.
22 Plaintiff has failed to raise a genuine issue that the CRA's fees
23 were discriminatory under the First Amendment.

24          4.   <u>Permit Approvals Based on Content Restrictions</u>

25      Plaintiff obliquely alleges that the City also conditions
26 permits on the content of the proposed signs.  Plaintiff has
27 offered no evidence to suggest that the City is aware of the
28 content of any proposed sign, so the City cannot, as a matter of

1  law, discriminate based on content.  (UF No. 35.)  As a result,

2  Plaintiff has raised no genuine issue that the City's actions

3  were content-based.

4           5.   Conclusion

5       As detailed above, Plaintiff has failed to raise a genuine

6  issue of material fact for any of its as-applied challenges to

7  the sign ordinance.  The City's motion for summary judgment on

8  these claims is GRANTED.

9       **C.   Plaintiff's Equal Protection Claim**

10      Plaintiff alleges a claim for equal protection violations,

11 which the Court previously deemed a claim brought under 42 U.S.C.

12 § 1983.  (July 23, 2007 Order at 32:16-17.)  To the extent this

13 claim challenges the City's alleged impermissible discrimination

14 based on Plaintiff's First Amendment rights, it fails for the

15 same reasons discussed above.

16      For the first time in opposition to summary judgment,

17 Plaintiff claims that its equal protection rights were violated

18 because the City entered a settlement agreement on September 30,

19 2006 with CBS and Clear Channel that allowed those companies to

20 erect signs on more favorable terms than are available to

21 Plaintiff.  These claims were not disclosed in Plaintiff's

22 complaint; nor did Plaintiff disclose them during discovery.

23 Plaintiff cannot now assert them to avoid summary judgment.  See

24 Wasco Prods., Inc. v. Southwall Techs., Inc., 435 F.3d 989, 992

25 (9th Cir. 2006) ("The necessary factual averments are required

26 with respect to each material element of the underlying legal

27 theory. . . .  Simply put, summary judgment is not a procedural

28 second chance to flesh out inadequate pleadings." (citation

22

1    omitted and ellipsis in original)).  Therefore, the City is

2    entitled to summary judgment on this claim as well.

3    **IV.   CONCLUSION**

4         The Court GRANTS the City's motion for summary judgment in its

5    entirety.

6

7    **DATED:     June 6, 2008**        _____

8                                       **AUDREY B. COLLINS**
                                        **UNITED STATES DISTRICT JUDGE**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28